## MATTER OF CUNNEY

### In SECTION 341 Proceedings

### A-12377300

*Decided by District Director*
*Approved by Assistant Commissioner March 23, 1964*

Voluntary voting in the political elections of a foreign state (Ireland) constitutes an overt act manifesting clearly and unambiguously a decision to accept the nationality of such foreign state which was previously acquired by operation of law and, consequently, results in loss of United States citizenship under section 2, Act of March 2, 1907.

The applicant, born in Ireland on December 10, 1940, has applied for a certificate of citizenship, claiming to have acquired citizenship at birth under section 1993, R.S., as amended, by virtue of her mother's naturalization on December 23, 1929, and prior residence in the United States.[1]

The applicant's mother was born in Ireland on February 14, 1898, and arrived in the United States on May 5, 1922. She was naturalized on December 23, 1929, in the Superior Court at Salem, Massachusetts. She returned to Ireland in 1931, married the applicant's father on August 24, 1932, and continued to reside in Ireland until February 7, 1960, when she was admitted to this country as an immigrant.

Whether or not the applicant acquired citizenship at birth depends upon whether her mother was still a citizen of the United States on the date of the applicant's birth, or whether she had been expatriated prior thereto under the provisions of the Act of March 2, 1907, by being naturalized as a citizen of the Irish Free State.[2]

---

[1] 48 Stat. 797. "Any child hereafter born out of the limits and jurisdiction of the United States, whose father or mother or both at the time of the birth of such child is a citizen of the United States, is declared to be a citizen of the United States; but the rights of citizenship shall not descend to any such child unless the citizen father or citizen mother, as the case may be, has resided in the United States previous to the birth of such child. * * *."

[2] Sec. 2 of the Act of March 2, 1907 (44 Stat. 1228) provides in part: "That any American shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws, * * *."

Shortly after the mother's arrival in the United States, the Irish Free State Constitution of December 6, 1922, granted citizenship of that State to persons born in Ireland and who were domiciled within the jurisdiction of the Irish Free State at that time.[3] The applicant's mother, then residing in the United States, was not so domiciled and did not acquire Irish citizenship thereby. Subsequently, the Irish Nationality and Citizenship Act of 1935 granted Irish citizenship to every person not a citizen by virtue of the Irish Constitution, who was born before December 6, 1922, in Ireland, if permanently residing in the Irish Free State at that time.[4] Clearly, the applicant's mother acquired citizenship of the Irish Free State under the provisions of this Act, being then married and residing in the Irish Free State with her husband.

Where one automatically acquired a foreign citizenship by operation of foreign law, there is a naturalization within the literal coverage of the Act of March 2, 1907,[5] and the applicant's mother was naturalized in the Irish Free State within the meaning of that Act. However, section 2 of the 1907 Act applies only to voluntary expatriation, and where a citizen of the United States acquires a foreign nationality through operation of law, and not upon his own application, his United States citizenship is not lost under the 1907 Act unless he indicates acceptance of the foreign nationality by some voluntary affirmative act. The naturalization by operation of law is regarded as in effect a continuing offer, the acceptance of which completes the act of naturalization in a foreign state made expatriating by said Act. Such an act of acceptance must be an overt voluntary act which manifests

---

[3] "Article 3. Every person, without distinction of sex, domiciled in the area of the jurisdiction of the Irish Free State (Saorstat Eireann) at the time of the coming into operation of this Constitution who was born in Ireland or either of whose parents was born in Ireland or who has been ordinarily resident in the area of the jurisdiction of the Irish Free State (Saorstat Eireann) for not less than seven years, is a citizen of the Irish Free State (Saorstat Eireann) and shall within the limits of the jurisdiction of the Irish Free State (Saorstat Eireann) enjoy the privileges and be subject to the obligations of such citizenship: Provided that any such person being a citizen of another State may elect not to accept the citizenship hereby conferred; and the conditions governing the future acquisition and termination of citizenship in the Irish Free State (Saorstat Eireann) shall be determined by law."

[4] Irish Nationality and Citizenship Act of 1935. Sec. 2—(4): "Every person who is not a citizen of Saorstat Eireann by virtue of Article 3 of the Constitution but was born before the 6th day of December 1922 either in Ireland or of parents of whom at least one was born in Ireland shall . . . (a) if such person is at the passing of this Act or becomes thereafter permanently resident in Saorstat Eireann be deemed to be a natural born citizen of Saorstat Eireann."

[5] Op. Atty. Gen., *Matter of Picone*, Int. Dec. #1259.

clearly and unambiguously a decision to accept the foreign nationality previously acquired by operation of law.[6]

Did the mother perform such an act of acceptance of the Irish nationality conferred upon her? She has testified that she voted in Irish elections commencing in 1937 and 1938, and continuing up until 1957; that such elections were for a president and members of the government body; that she voted because representatives of the candidates came to her and asked her to vote; that she was told that she was on the Irish registry and entitled to vote so she voted; that no one compelled her, or used any pressure upon her to vote; and that she did not think there was anything wrong with it. The record establishes further that when she voted, she knew that she was a citizen of the United States because she had gone to Ireland as a citizen; she had "the paper"; and that when requested to vote, had raised a question as to whether she could vote because she was an American citizen. It was her belief that only Irish citizens were entitled to vote. Such belief is supported by the Irish constitution and Irish law.[7]

The applicant's mother having voluntarily performed an act for which only citizens of the Irish Free State were eligible, it remains to be determined whether the acts of voting clearly and unambiguously manifested a decision to accept the Irish nationality which had been conferred upon her by operation of law.[8] Voting has been characterized as indicating:

* * * a desire on the part of the participant to make himself a part of a government by assisting in the choice of those who are, by this mandate, to govern its affairs. The participation in an election is merely one method of expressing one's allegiance to the State in which the election is held.[9]

---

[6] *Ibid.*

[7] Article 16.1.2 of the Irish Constitution declares, "Every citizen without distinction of sex who has reached the age of twenty-one years who is not disqualified by law and complies with the provisions of the law relating to the election of members of Dail Eireann, shall have the right to vote at an election for members of Dail Eireann."

The Consulate General of Ireland has informed this Service that:

"The Electoral Act, 1923 provides in Paragraph 1, of Part 1 that every person without distinction of sex who is an Irish citizen and has attained the age of twenty-one years and is not subject to any legal incapacity is entitled to be registered once as a Dail elector in one but not more than one constituency in Ireland. Paragraph 3 of Part 1 declares that every person registered as a Dail elector for a constituency, shall, while so registered, be entitled to vote at any Dail election for the constituency, and also to vote in that constituency at every Referendum."

In this connection, it is to be noted that citizenship is generally a prerequisite to the right to vote. *Barasanti* v. *Acheson*, 103 F.Supp. 1011, aff'd 200 F.2d 562.

[8] Voting in a foreign election prior to January 13, 1941, was not, of itself, an act of expatriation under then existing law. *Matter of M——*, 1 I. & N. Dec. 537.

[9] *Ueno* v. *Acheson*, 96 F.Supp. 510, 514.

**Further,**

taking an active part in the political affairs of a foreign state by voting in a political election therein is believed to involve a political attachment and practical allegiance thereto which is inconsistent with continued allegiance to the United States. * * *.[10]

In the face of such expressions as to the nature of the act of voting in a political election, it can only be concluded that voting in the political elections of a foreign state is an overt act manifesting clearly and unambiguously a decision to accept a foreign nationality previously acquired by operation of law. Since the record establishes that the applicant's mother voted voluntarily in the Irish elections in 1937 and 1938, at a time when she was aware that she was a citizen of the United States,[11] it is concluded that she was expatriated in 1937 [12] under the Act of March 2, 1907, and was not a citizen of the United States when the applicant was born.

**ORDER:** It is ordered that the application for a certificate of citizenship herein be and the same hereby is denied.

[10] *Perez v. Brownell*, 356 U.S. 44, 54; 78 S.Ct. 568.

[11] Cf, *Matter of C—S—*, 9 I. & N. Dec. 670.

[12] *Matter of Di—P—*, 9 I. & N. Dec. 660.