**Morris Louis BAKER, Plaintiff,**

**v.**

**Dean RUSK, Secretary of State, Defendant.**

**Civ. A. No. 67–1641.**

United States District Court
C. D. California.

March 17, 1969.

Kwan, Cohen & Kwan by Arthur D. Cohen, Los Angeles, Cal., for plaintiff.

Wm. Matthew Byrne, Jr., Frederick M. Brosio, Jr., by James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

The plaintiff in this action, pursuant to the provisions of 8 U.S.C. § 1503 and 28 U.S.C. § 2201, seeks a judgment declaring him to be a national of the United States. The defendant, as Secretary of State of the United States, contends that the plaintiff has voluntarily relinquished his citizenship and therefore is no longer a national of this Country. On the basis of a trial of the issue thus presented, and for reasons set forth in this opinion, this court now concludes that the plaintiff is entitled to, and will be accorded, the declaratory judgment that he seeks.

None of the facts recited in this memorandum are in dispute. The plaintiff was born in 1905 at Fargo, North Dakota. Within the following year, his mother took him to Canada and there placed him in the care of an uncle, with whom he lived throughout childhood and adolescence. In due course, the plaintiff was graduated from the University of Alberta with a degree in law, and he was admitted to practice this profession in Alberta on June 17, 1926. The ceremony of admission consisted, in part, of the clerk of the court causing the successful applicants to raise their hands and repeat, phrase by phrase, the oath required of all candidates. At about the same time, the plaintiff also executed in writing the prescribed Barristers' and Solicitors' Oath, which presumably was the same oath that he took orally.

The first paragraph of such oath contained a provision that " * * * I will be faithful and bear true allegiance to His Majesty King George the Fifth * * and * * * will defend him to the utmost of my power against all traitorous conspiracies * * * against his person,

Crown and dignity. * * * " In the remaining paragraph, the candidate promised to handle all professional matters to the best of his ability and to uphold and maintain " * * * the King's interest and my fellow citizens * * * according to the law in force in this Province."

The plaintiff thereafter practiced law in Canada for several years, and in 1944 he returned to the United States, intending to reside here permanently. The officials of the Immigration and Naturalization Service of the Department of State immediately took, and ever since have maintained, the position that the plaintiff had lost his citizenship in 1926 by taking the hereinabove mentioned oath.

Such challenge of the plaintiff's citizenship is based upon section 2 of the Act of March 2, 1907, 34 Stat. 1228, which was in effect in 1926 and provides as follows:

"[A]ny American citizen shall be deemed to have expatriated himself * * * when he has taken an oath of allegiance to any foreign state."

■ The Fourteenth Amendment states that "All persons born or naturalized in the United States * * * are citizens of the United States * * *." This constitutional provision serves to " * * * protect every citizen of this Nation against a congressional forcible destruction of his citizenship * * *." It follows that the plaintiff, like any other citizen, has " * * * a constitutional right to remain a citizen * * * unless he voluntarily relinquishes that citizenship." Afroyim v. Rusk, 387 U.S. 253, 268, 87 S.Ct. 1660, 1668, 18 L.Ed.2d 757, 767 (1967).

■ In light of this constitutional right of a citizen and the corresponding limitation upon the power of Congress, the provision in section 2 of the Act of March 2, 1907, 34 Stat. 1228, under which the plaintiff " * * * shall be deemed to have expatriated himself * * * ", may not be interpreted to mean that, by tak-

ing the oath in 1926, he lost his United States citizenship as a matter of law. Instead, the question here concerned is whether in so doing the plaintiff voluntarily relinquished such citizenship.

■ This question having been raised, 8 U.S.C. § 1481(c) places upon the defendant, as the party claiming that loss of citizenship occurred, the burden of establishing such claim by a preponderance of the evidence. And, as (the then) Attorney General Clark observed in his statement of interpretation of *Afroyim* (34 Fed.Register 1079, 1080, January 23, 1969) the opinion in that case suggests that this burden of proving such voluntary relinquishment is not an easy one to satisfy.

It would seem evident that any time a person takes an oath of allegiance to the sovereign of the country in which he is then residing, he gives substantial indication that he considers himself to be a national of that country and that he has relinquished any prior citizenship. However, this is not inevitably so, as is illustrated by the present case.

The plaintiff testified that from his earliest boyhood his mother reminded him that he was a United States citizen, a heritage that he always cherished and never intended to relinquish. He stated further that at no time prior to the ceremony of his admission to the bar had he been aware of the nature of the prescribed oath, and that, when such oath was administered to him, the excitement of the prospect of immediately becoming a lawyer was such that he did not advert to any collateral implications that might be involved in the undertaking. This is understandable.

It seems to me, also, that, even if the plaintiff had been vividly cognizant of the words of the oath that he took, he might thereby have intended to acknowl-edge allegiance and swear loyalty to King George V as the symbolic head of the legal system and institutions to which he was hoping to devote his professional life, without claiming the King as his national sovereign and turning his back on his native land.

In any event, the plaintiff, after taking the oath, did not at any time consider himself to be a citizen of Canada. He did not vote in any election in that country and, apart from the matter of the oath, there is no indication that he made any expression or performed any act that might be considered inconsistent with his United States citizenship.

In 1926, Canadian citizenship was not a requirement of admission to the bar of Alberta, and the defendant acknowledges (in the answer to the complaint) that replies from Canada to inquiries by the United States Immigration Service " * * indicated that the plaintiff was not a citizen of Canada."

■ Under all of these circumstances, it is concluded that the defendant has not met the burden of establishing its claim that the plaintiff has abandoned his allegiance to the United States. The plaintiff remains a citizen of his native land, and a judgment will be entered so declaring.

The plaintiff asks that the defendant be ordered to honor his application for a passport, which has heretofore been denied him because of the defendant's contention concerning his citizenship status. Such an order is withheld in the confidence that it will be unnecessary, once the forthcoming declaratory judgment is issued and becomes final.

This memorandum shall constitute findings of fact and conclusions of law, pursuant to Rule 52(a), Federal Rules of Civil Procedure.