**In the Matter of the Petition for Naturalization of Frank BALSAMO.**

**No. 444408.**

United States District Court
N. D. Illinois, E. D.
Nov. 20, 1969.

and Recommendation does hereby adopt, ratify and confirm the same haec verba.

Now, therefore, it is hereby ordered, adjudged and decreed that the Certificate of Loss of Nationality, issued to Frank Balsamo pursuant to Section 404 (a) of Chapter IV of the Nationality Act of 1940, be and the same is hereby declared null and void ab initio and said Frank Balsamo is hereby decreed to be a naturalized citizen of the United States of America now and at all times since December 16, 1926 and is therefore ineligible to again be naturalized.

## APPENDIX

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS

Petition for Naturalization
of
FRANK BALSAMO

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION OF DESIGNATED NATURALIZATION EXAMINER

TO THE HONORABLE, THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS:

1. The undersigned, duly designated under the Immigration and Nationality Act to conduct preliminary examinations upon petitions for naturalization, respectfully submits that the above named petitioner, a 69-year-old native and national of Italy who was lawfully admitted to the United States for permanent residence on June 5, 1957, filed the petition for naturalization referred to above on January 4, 1966, under the provisions of Section 316(a) of the Immigration and Nationality Act (8 U.S.C. § 1427).

The question presented is whether the petitioner is a United States citizen, the question arising by reason of the fact that he was naturalized in the Circuit

Frank Balsamo, pro se.

Harold W. Calhoun, Designated Naturalization Examiner, for I. N. S.

## DECREE

PERRY, District Judge.

This cause comes on to be heard upon the Petition for Naturalization of Frank Balsamo, a hearing thereon, and the Findings of Fact, Conclusions of Law and Recommendation of the designated Naturalization Examiner.*

The court having considered said Findings of Fact and Conclusions of Law

* See Appendix.

Court of Cook County at Chicago, Illinois during 1926, subsequently returned to Italy, and, by protracted residence there, automatically reacquired Italian nationality.

2. The undisputed facts are as follows. Petitioner, born in Italy on March 25, 1900, first entered the United States on May 27, 1920. He was naturalized on December 16, 1926, and, after becoming a citizen, he returned to Italy on several occasions.

Initially, he, his wife, and his two children, who had been born in the United States in 1928 and 1930, respectively, went to Italy in April 1936. His wife and children remained there, but he came back to the United States in about February 1938. Then, in April 1938, he rejoined his family in Italy. In 1952, after 14 years in Italy, petitioner decided to return to the United States and applied to the United States Consulate in Palermo for a passport. The application, however, was rejected, and the Department of State issued a Certificate of Loss of Nationality, advising him that he had lost his United States citizenship in accordance with the provisions of Section 404(a) of Chapter IV of the Nationality Act of 1940 by residing for over two years in Italy, a foreign state of which he was formerly a national, and by reacquiring through such residence the nationality of such foreign state by operation of Italian law.

Some four years thereafter, petitioner chose to immigrate to the United States, obtained a permanent resident's visa, and presented it when he entered this country on June 5, 1957. Then, on March 23, 1958, he went back to Italy, returned to the United States on December 27, 1958, went back to Italy again during April 1960, returned to this country on September 5, 1961, and has remained here continuously since the latter date.

On January 4, 1966, he filed his petition for naturalization with the Court. When asked during an examination conducted in accordance with 8 U.S.C. § 1446 why he had remained abroad for such prolonged periods, he explained that he returned to Italy in 1936 to visit his parents; that he went back in 1938 to visit his wife and children and remained abroad because of his wife's death in 1942, and because of World War II; that his trip in 1958 was due to the death of his daughter; and that he returned to Italy in 1960 to recuperate from an illness. During the examination he also testified that when visiting Italy he did not intend to remain permanently; that he did not belong to any political parties; that he did not take an oath of allegiance; that he did not serve in the armed forces; that he was not employed by the Italian Government; that he did not vote in any political elections; that he did not formally renounce his United States citizenship; and that he did not intend to abandon or relinquish his United States citizenship.

Subsequently, on January 9, 1968, in answer to an inquiry from petitioner, the Department of State informed him that their prior decision that he had expatriated himself was reversed and that said Certificate of Loss of Nationality was void.

3. Section 2 of the Act of March 2, 1907, 34 Stat. 1228, provided as follows:

"That any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws * * *."

Section 404 of the Nationality Act of 1940 (8 U.S.C. § 804), effective January 13, 1941, states:

"A person who has become a national by naturalization shall lose his nationality by:

(a) Residing for at least two years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, if he acquires through such residence the nationality of such foreign state by operation of the law thereof; or

(b) Residing continuously for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, except as provided in section 406 hereof;

(c) Residing continuously for five years in any other foreign state * * *."

Article IX of the Italian Nationality Law of June 13, 1912 provided: [1]

"If a person has ceased to be an Italian citizen * * * he may recover Italian citizenship if he:

(3) Having ceased to be an Italian citizen owing to the acquisition of foreign citizenship, has been resident in the kingdon for two years."

The petitioner, born in Italy, was a citizen of that country at the time of his birth. He lost this nationality, however, when he became a citizen of the United States on December 16, 1926.[2] Then, in April 1940, two years after he returned to Italy, he reacquired Italian citizenship in accordance with Article IX (3) of the Italian Nationality Law of June 13, 1912, *supra*,[3] and by such residence and reacquisition of Italian nationality brought himself squarely within the expatriating provisions of Section 2 of the Act of March 2, 1907, *supra,* and Section 404 (a) of the Nationality Act of 1940, *supra.*

Although initially it seems reasonably clear that petitioner lost his United States citizenship by reacquiring Italian nationality, the issue is far from settled because of two recent Supreme Court decisions: Schneider v. Rusk,[4] and Afroyim v. Rusk.[5]

We turn first to Schneider v. Rusk. That case involved Section 352(a) (1) of the 1952 Act,[6] a statutory provision which is almost identical to Section 404 (b) of the Nationality Act of 1940, *supra*. The pertinent part of Section 352 provides:

"(a) A person who has become a national by naturalization shall lose his nationality by—

(1) having a continuous residence for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, except as provided in section 353 of this title, whether such residence commenced before or after the effective date of this Act * * *."

The Supreme Court, however, in *Schneider,* held this statutory provision unconstitutional and declared that Congress could not properly restrict the freedom of naturalized citizens to reside abroad.

The Court said: [7]

" * * * A native-born citizen is free to reside abroad indefinitely without suffering loss of citizenship. The discrimination aimed at naturalized citizens drastically limits their rights to live and work abroad in a way that other citizens may. It creates indeed a second-class citizenship. *Living abroad, whether the citizen be naturalized or native born, is no badge*

---

1. United Nations Publication, "Laws Concerning Nationality", (1954), at 269.

2. When petitioner became a naturalized citizen of the United States, he lost his Italian nationality pursuant to the provisions of Article VIII(1) of the Italian Nationality Law of June 13, 1912, which provided that "one loses citizenship when he of his own free will acquires a foreign citizenship and establishes or has established his residence abroad." See note 1, *supra*, at 268.

3. Hackworth, Digest of International Law, at 212 (1942); Matter of Monastra, 10

I. & N. Dec. 394, at 395 (Ass't. Comm., 1963) ; Matter of Picone, 10 I. & N. Dec. 139, at 142, 146 (AG, 1963) ; Matter of Di P–, 9 I. & N. Dec. 660, at 661 (BIA, 1962).

4. 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed. 2d 218 (1964).

5. 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed. 2d 757 (1967).

6. Section 352, Immigration and Nationality Act of 1952, 66 Stat. 163, 269, 8 U.S.C. §§ 1101 et seq., 1484.

7. 377 U.S. at 168–169, 84 S.Ct. at 1190.

*of lack of allegiance and in no way evidences a voluntary renunciation of nationality and allegiance. It may indeed be compelled by family, business, or other legitimate reasons."* (Emphasis added)

Then, faced with the question of whether a United States citizen could constitutionally be deprived of his citizenship under Section 401(e) of the Nationality Act of 1940 [8] by voluntarily voting in a foreign political election, the Supreme Court, in Afroyim v. Rusk, overruled its prior decision in Perez v. Brownell,[9] established an important new principle in the law of expatriation, and held that since the Fourteenth Amendment describes citizenship as that "which a citizen keeps unless he voluntarily relinquishes it", Congress may not forcibly expatriate a citizen. Justice Black, writing for a 5-to-4 divided court, stated:[10]

" * * * Citizenship is no light trifle * * *. The very nature of our free government makes it completely incongruous to have a rule of law under which a group of citizens temporarily in office can deprive another group of citizens of their citizenship. We hold that the Fourteenth Amendment was designed to, and does, protect *every* citizen of this Nation against congressional forcible destruction of his citizenship, whatever his creed, color, or race. *Our holding does no more than to give to this citizen that which is his own, a constitutional right to remain a citizen in a free country unless he voluntarily relinquishes that citizenship."* (Emphasis added)

But the Court in *Afroyim* expressly invalidated only Section 401(e) of the Nationality Act of 1940,[11] did not rule upon the constitutionality of other expatriating provisions, and did not state what declarations or other conduct constitutes a voluntary relinquishment or abandonment of citizenship. The problem is spelled out clearly by Justice Harlan speaking for four members of the Court in his dissenting opinion:[12]

"It is appropriate to note at the outset what appears to be a fundamental ambiguity in the opinion for the Court. The Court at one point intimates, but does not expressly declare, that it adopts the reasoning of the dissent of The Chief Justice in Perez. The Chief Justice there acknowledged that 'actions in derogation of undivided allegiance to this country' had 'long been recognized' to result in expatriation, id., at 68 [78 S.Ct. at 581]; he argued, however, that the connection between voting in a foreign political election and abandonment of citizenship was logically insufficient to support a presumption that a citizen had renounced his nationality. Id., at 76 [78 S.Ct. at 586]. It is difficult to find any semblance of this reasoning, beyond the momentary reference to the opinion of The Chief Justice, in the approach taken by the Court today; it seems instead to adopt a substantially wider view of the restrictions upon Congress' authority in this area. Whatever the Court's position, it has assumed that voluntariness is here a term of fixed meaning; in fact, of course, it has been employed to describe both a specific intent to renounce citizenship, and the uncoerced commission of an act conclusively deemed by law to be a relinquishment of citizenship. Until the Court indicates with greater precision what it means by 'assent,' today's opinion will

8. 54 Stat. 1137, as amended, 58 Stat. 746, 8 U.S.C. § 801: "A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * * (e) Voting in a political election in a foreign state or participating in an election or plebiscite to determine the sovereignty over foreign territory."

9. 356 U.S. 44, 78 S.Ct. 568, 2 L.Ed.2d 603 (1958).

10. 387 U.S. at 267–268, 87 S.Ct. at 1668.

11. See note 8, *supra.*

12. 387 U.S. at 269, note 1, 87 S.Ct. at 1668.

surely cause still greater confusion in this area of the law."

The ultimate question that must be resolved, therefore, is whether petitioner's protracted residence in Italy after automatically reacquiring citizenship of that country constitutes a voluntary renunciation or relinquishment of United States citizenship resulting in expatriation under Section 2 of the Act of March 2, 1907, *supra*, or Section 404(a) of the Nationality Act of 1940, *supra*.

■ First of all, it is clear from an examination of the case law that reacquisition of Italian citizenship is a naturalization within the scope and meaning of the expatriation statutes,[13] and that " * * * Nearly all sovereignties recognize that acquisition of foreign nationality ordinarily shows a renunciation of citizenship * * * "[14] but it is equally clear that petitioner could not have lost his United States citizenship under Section 2 unless, prior to January 13, 1941, the date the Act of 1907 was repealed, he performed an affirmative voluntary act clearly manifesting a decision to accept the Italian nationality automatically reacquired by operation of law.[15] The record discloses that petitioner performed no such act.

■ Further, applying the rationale of the *Schneider* decision, that "Living abroad, whether the citizen be naturalized or native born, is no badge of lack of allegiance and in no way evidences a voluntary renunciation of nationality and allegiance * * *", and applying

the rationale of the *Afroyim* decision,[16] that a citizen has " * * * a constitutional right to remain a citizen in a free country unless he voluntarily relinquishes that citizenship * * * ", it is concluded that petitioner, by automatically reacquiring Italian citizenship and by his voluntary protracted residence in that country did not, by such conduct, or by any other declaration or act, voluntarily abandon or relinquish his United States citizenship under either of the expatriation statutes in question.

Accordingly, I find that petitioner, having been naturalized on December 16, 1926, is a citizen of the United States; that he did not expatriate under Section 2 of the Act of March 2, 1907 or under Section 404(a) of the Nationality Act of 1940; that he has failed to establish alienage or non-citizen nationality of the United States; and that he is, therefore, ineligible for naturalization.

4. Pursuant to the provisions of Section 335 of the Immigration and Nationality Act (8 U.S.C. § 1446), I hereby make the following findings of fact and conclusions of law:

Findings of Fact:

(a) That the petitioner was born in Italy on March 25, 1900;

(b) That the petitioner was naturalized in the Circuit Court of Cook County at Chicago, Illinois on December 16, 1926;

(c) That the petitioner returned to Italy during 1938 and voluntarily

---

13. Matter of Monastra, 10 I. & N. Dec. 394 (Ass't Comm., 1963); Matter of Picone, 10 I. & N. Dec. 139, at 146 (AG, 1963); Matter of M–, 6 I. & N. Dec. 70, 71 (BIA, 1953); Matter of V–, 3 I. & N. Dec. 671 at 676 (BIA, 1949).

14. See Perez v. Brownell, 356 U.S. at 68, 78 S.Ct. at 581 (dissenting opinion of the Chief Justice).

15. Matter of Cunney, 10 I. & N. Dec. 484 (Ass't. Comm., 1964); Matter of Monastra, 10 I. & N. Dec. 394 (Ass't. Comm.,

1963); Matter of Picone, 10 I. & N. Dec. 139, and cases cited on P. 142, 147 (AG, 1963); Matter of Di P–, 9 I. & N. Dec. 660 (BIA, 1962); Matter of M–, 6 I. & N. Dec. 70, (BIA, 1953).

16. For the Attorney General's Statement of Interpretation of *Afroyim*, see 34 Fed. Reg. 1079 (January 23, 1969). See also Bellei v. Rusk, 296 F.Supp. 1247 (D.D.C.1969); Baker v. Rusk, 296 F.Supp. 1244 (C.D.Cal.1969); and Matter of Becher, 12 I. & N. Dec. 380 (AG, 1967).

remained there continuously until at least 1952;

(d) That the petitioner, during his resumed residence in Italy, did not belong to any political parties, did not take an oath of allegiance to Italy, did not serve in the armed forces, was not employed by its government, did not vote in a political election, did not formally renounce his United States citizenship, and did not intend to relinquish or abandon his United States nationality.

Conclusions of Law:

(a) That the petitioner was a national of Italy at the time of his birth;

(b) That the petitioner lost his Italian nationality when he was naturalized in the Circuit Court of Cook County at Chicago, Illinois on December 16, 1926;

(c) That the petitioner automatically reacquired Italian nationality during April 1940, two years after he returned there;

(d) That the petitioner did not lose his United States citizenship under Section 2 of the Act of March 2, 1907, under Section 404(a) of the Nationality Act of 1940, or under any other provision of the expatriation laws;

(e) That the petitioner is a citizen of the United States and thus ineligible for naturalization.

5. I recommend that this petition for naturalization be DENIED on the ground that the petitioner has failed to establish alienage or non-citizen nationality of the United States, and is thus ineligible for naturalization.

Respectfully submitted,

(s) Harold W. Calhoun
Designated Naturalization Examiner

Nov. 13, 1969
Date