UNITED STATES of America,
Plaintiff,

v.

AMERICAN GREETINGS CORPORA-
TION, Defendant.

Civ. A. No. 32986.

United States District Court
N. D. Ohio, E. D.

Dec. 2, 1958.

46

Berry W. Stanley, Frank C. McAleer, Federal Trade Commission, Washington, D. C., Sumner Canary, U. S. Dist. Atty., Cleveland, Ohio, for plaintiff.

Robert W. Poore, James T. Lynn, Cleveland, Ohio, for defendant.

WEICK, District Judge.

This is a civil action, brought under Section 5(*l*) of the Federal Trade Commission Act [15 U.S.C.A. § 45(*l*)], to recover $40,000 in penalties for alleged violations of a cease and desist order of the Federal Trade Commission. The complaint originally contained 11 counts, 3 of which have been dropped. A penalty of $5,000 on each count is sought in the eight remaining counts. The defendant denies violating any of the provisions of the Order.

The defendant is a corporation engaged in an interstate business in the manufacture and sale of greeting cards.

The provisions of the cease and desist order which defendant is alleged to have violated are as follows:

(A) Offering to buy or buying and taking over stocks of greeting cards sold and distributed by competitors to retail sellers.

(B) Agreeing or arranging with retail sellers to junk and destroy stocks of greeting cards distributed to such retail sellers by competitors.

(D) Agreeing or arranging with retail sellers of greeting cards distributed to such retail sellers by competitors to take over and remount so as to obscure and to make difficult the identification of trademarks and trade names of competitors.

(E) Acting to return, through interstate commerce, to retail sellers, greeting cards produced by competitors after identification has been obscured and otherwise made difficult through various ways and means, including those specified in the immediately preceding sub-paragraph; and

(F) Arranging or acting to have its salesmen and its other representatives make arrangements of displays of greeting cards in stores of retail sellers in such way that greeting cards produced by its competitors are displayed as if they were products of respondent.

Greeting cards are normally displayed for sale attached to mounts, and contained in a wood or metal cabinet. A mount is a stiff cardboard backing to which the greeting card is attached, either directly or in a transparent cellophane sleeve glued to the mount. In some instances the manufacturer's trade-mark or trade name appears on the mount itself, while in others the mounts are blank. These mounted cards are for display purposes only as the sales inventory is kept in drawers in the cabinet. By displaying the cards on mounts they are kept neat, clean and orderly and shoppers may handle and inspect them without soiling.

Defendant is alleged in Counts 1, 2, 3, 4, 7, 8 and 10 to have violated Paragraphs "D" and/or "E" of the Federal Trade Commission's Order when it removed competitors' greeting cards from mounts which bore the trade-mark and trade name of the producer or distributor of the greeting card and placed such competitors' greeting cards on mounts without any trade name or trade-mark appearing thereon.

These blank mounts were mounts of the American Greetings Corporation from which the American Greetings name was blanked out, originally by means of ink or china pencil and later by covering the name American Greetings with a black masking tape. This procedure was followed when American Greetings acquired a new account who had previously dealt with a competitor and had a carry-over inventory of the competitor's cards. It was necessary to do so to enable all greeting cards, old and new, to be displayed in an integrated manner in an American Greetings style display cabinet.

The Government contends that the Order was violated (1) in the removing of the competitor's cards from a mount bearing the competitor's legend and placing them in blank mounts, and (2) in placing the card in a sleeve which is glued to the mount, so that the trade-mark or trade name on the back of the greeting card itself may only be observed by bending the sleeve up or removing the card from the mount.

The defendant contends that Paragraph "D" of the Order is ungrammatical and ambiguous and was not intended to prohibit this practice of remounting competitors' cards, which it asserts was common in the industry.

Defendant asserts that the Order has reference only to obscuring trade names which appear on the cards themselves and that they are not obscured when placed in a transparent sleeve which reveals the names and marks when it is bent upward or when the card is removed from the mount. It is also the claim of

defendant that the Order has no application to trade names on the mounts themselves.

The purpose of the Trade Commission Act was to outlaw unfair methods of competition and deceptive acts or practices in commerce. 15 U.S.C.A. § 45(a).

The Supreme Court has declared that:

"The object of the Trade Commission Act was to stop in their incipiency those methods of competition which fall within the meaning of the word 'unfair'. 'The great purpose of both statutes was to advance the public interest by securing fair opportunity for the play of the contending forces ordinarily engendered by an honest desire for gain.' Federal Trade Commission v. Sinclair Co., 261 U.S. 463, 476, 43 S.Ct. 450, 454, 67 L.Ed. 746 * * * In a case arising under the Trade Commission Act, the fundamental questions are whether the methods complained of are 'unfair,' * * *." Federal Trade Commission v. Raladam Co., 1931, 283 U.S. 643, 647, 51 S.Ct. 587, 589, 75 L.Ed. 1324.

■ The Order proscribes remounting of cards of competitors "so as to obscure and make difficult the identification of trade-marks and trade names." It clearly applies with equal force to names which appear on the mounts themselves as well as to names printed on the cards.

If the competitors' cards had previously been mounted on blank mounts containing no trade-mark or trade name, then it could hardly be claimed to be an unfair practice for defendant to remount the cards in exactly the same manner as before.

It was certainly not intended by the Order to make illegal the practice of remounting competitors' cards, which was common in the industry.

■ Nor would it be unlawful to remount on blank mounts competitors' cards which previously had been displayed loosely and unmounted. There was no obligation on the part of defendant to advertise the products of its competitors.

By placing the cards in transparent cellophane sleeves, the trade-marks or trade names appearing on the back of the cards are in no manner defaced, destroyed or obscured. The trade names may be seen by simply turning up the sleeves and looking at them or by sliding the cards out of the sleeves.

■ It is an entirely different matter, however, for the defendant to remove competitors' cards from mounts which bore the competitors' trade-marks or trade names and remount them in blank mounts. Here the trade-marks and trade names have not merely been obscured or made difficult to read, but they have been entirely obliterated. The cards are being displayed differently than before and to the advantage of the defendant and the disadvantage of the competitors. While there may be no duty on the part of defendant to advertise the cards of its competitors, it is unfair to remove their trade-marked mounts and remount the cards in blank mounts and to display them in the same display cabinet with mounts bearing the trade-mark or trade name of defendant.

Defendant claims that this precise activity was not prohibited by the express terms of the Order; that the subject of the Federal Trade Commission's investigation related to remounting of competitors' trade-marked cards in mounts which bore defendant's trade name or to the stamping of defendant's trade names over the competitors' trade names on the cards themselves.

■ Even if this were true, the Commission was not restricted to prohibiting the illegal practice in the precise form in which it was engaged, but could go further and inhibit variations of the same practice which it considered necessary to achieve the desired result. This it could do by a general order which is entitled to a liberal construction to encompass variations of the practice.

In Federal Trade Commission v. Ruberoid Co., 1952, 343 U.S. 470, 473, 72

S.Ct. 800, 803, 96 L.Ed. 1081, the Supreme Court said:

> "Orders of the Federal Trade Commission are * * * to prevent illegal practices in the future. In carrying out this function the Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. If the Commission is to attain objectives Congress envisioned, it cannot be required to confine its roadblock to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its orders may not be by-passed with impunity."

■ The evidence in Counts 1, 2 and 7 establishes a violation of Paragraph "D" of the Order, and it follows that Paragraph "E" which relates to interstate shipments of prohibited mounts was also violated.

In Counts 3, 4, 8 and 10 the evidence failed to establish to the satisfaction of the Court that the competitor's trade-mark or trade name appeared on the former mounts.

■ As previously pointed out, the remounting of a competitor's card on a blank mount could not possibly be considered a violation of the Order where the competitor's previous mount was blank and had no trade-mark or trade name.

Since Paragraph "D" of the Order was not violated in Counts 3, 4, 8 and 10, it follows that there was no violation of Paragraph "E" which relates to interstate shipment of prohibited remounts.

Violations of Paragraph "F" of the Federal Trade Commission's Order are also alleged in Counts 3, 4 and 5. The basis for these alleged violations was that defendant arranged with the retail dealer for the display of cards of both American Greetings and its competitors in the same cabinet over which appeared a lighted sign bearing only the American Greetings name or motto.

It is obvious that a shopper would thereby be led to believe that this was a display only of American Greetings' cards. The only name he could readily see was American Greetings which was on the sign and also on some of the mounts. Competitors' cards were displayed on blank mounts and unless the shopper went through the motions of turning up the sleeve and looking for a trade-mark on the back of the card or removing the card from the sleeve, he would not know that the blank mount contained the card of a competitor. This was done by the dealer under arrangements with defendant. The evidence sustains the charge in Counts 3, 4 and 5 of violation of Paragraph "F".

Finally, a violation of Paragraphs "A" and "B" of the Order is charged in Count 4.

Gordon Harris, the owner of a retail drug store, testified that defendant's salesman Allan Warneke (now deceased) went through his cabinet and checked over the supply of competitors' cards and removed the cards deemed to be unsaleable and put them in a box which was taken and destroyed by an employee of Harris.

Mr. Harris also testified that he believed he received a credit from defendant of 50% of the retail price of the destroyed cards.

Defendant's sales-manager produced a record of the company which did not show any such credit.

There would seem to be no good reason for Harris to testify as to receiving a credit from defendant if it were not true. He was not unfriendly to defendant and was still doing business with it.

■ It makes no difference that the cards were unsaleable. Hastings Mfg. Co. v. Federal Trade Commission, 6 Cir., 1946, 153 F.2d 253.

The participation of defendant's salesman in the transaction and the giving of credit violated Paragraphs "A" and "B" of the Order.

The remaining question to be considered relates to the penalty to be imposed by

the Court on the defendant for violation of Counts 1, 2, 3, 4, 5 and 7.

In its Report of Compliance filed with the Federal Trade Commission, defendant stated its intention to assume the practice of remounting competitors' cards on blanked out American Greetings mounts (Par. 6 Report of Compliance). No objection was made to this proposal nor was its propriety at all questioned. This fact assumes greater significance in view of the statement made in the last letter from the Federal Trade Commission to American Greetings prior to the filing of the report of compliance:

> "If you will give us all the relevant facts in the report of compliance, we will give careful consideration to the report and advise you as to anything lacking. * * *"

Subsequent to the issuance of the Order and prior to the institution of this action American Greetings had dealings with a Federal Trade Commission representative, Mr. Donald Brady. In all the discussions with Mr. Brady the issue of the propriety of the use of a blank remount card was never raised. Rather, it appears that Mr. Brady suggested means of improving the method of blanking out the American Greetings name.

It is asserted by the Government that this failure of the Federal Trade Commission, its officers or employees, to speak out against the practice of remounting competitors' cards on blank mounts does not create an estoppel to assert that practice as a violation of the Commission Order. Utah Power & Light Co. v. United States, 1917, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791. This may very well be true, but it is certainly a circumstance to be considered in ascertaining the amount of the penalty to be imposed for violation of the Order. The Government's failure to speak out against this practice while fully cognizant of it for a period of approximately four years might lead the defendant to believe that the Government was not objecting to it, and impels the Court to assess only a nominal penalty.

Two Hundred Dollars penalty on each Count is hereby fixed for violation of Counts 1, 2 and 7.

Considerations of acquiescence or estoppel by the Commission are not involved in Counts 3, 4 and 5 and a penalty of $2,500 on Count 3, $5,000 on Count 4 and $2,500 on Count 5 is fixed for the violation thereof by defendant.

This memorandum is adopted as findings of fact and conclusions of law. Judgment may be entered in favor of plaintiff and against the defendant for $10,600 and in favor of defendant and against the plaintiff on Counts 8 and 10.