**UNITED STATES of America,**
**Plaintiff,**

v.

**ANCORP NATIONAL SERVICES, INC.,**
**Defendant.**

**No. 70 Civ. 5770.**

United States District Court,
S. D. New York.

Nov. 30, 1973.

Paul J. Curran, U. S. Atty., S.D.N.Y., for plaintiff; Gerald A. Rosenberg, Naomi L. Reice, New York City, of counsel.

Delson & Gordon, New York City, for defendant; Eugene Frederick Roth, George Halpern, New York City, of counsel.

## OPINION

BONSAL, District Judge.

This is a suit by the United States to collect civil penalties in the amount of $585,000 from the defendant Ancorp National Services, Inc. ("Ancorp") for allegedly violating a final Cease and Desist Order of the Federal Trade Commission ("FTC") issued on April 13, 1964 ("the FTC Order"). The United States also seeks a permanent injunction. Jurisdiction is alleged under 15 U.S.C. §§ 45(*l*) and 56, and 28 U.S.C. §§ 1337, 1345, and 1355.

On February 5, 1959, the Federal Trade Commission filed an administrative complaint, charging respondents American News Company (now Ancorp) and Union News Company (now a subdivision of Ancorp) with unfair competitive practices. The complaint charged the respondents with having violated section 5 of the Federal Trade Commission Act by inducing and coercing suppliers to make payments or to grant allowances as compensation for services or facilities furnished in connection with the sale of such suppliers' products on respondents' newsstands when respondents knew or should have known that such payments were not being offered or made available on proportionally equal terms to all customers of such suppliers who were in competition with the respondents. On January 10, 1961, after an administrative hearing, the FTC issued a Cease and Desist Order. On February 7, 1962, the Court of Appeals for the Second Circuit modified the FTC Order and affirmed it as modified. American News Co. v. FTC, 300 F.2d 104 (2d Cir. 1962). On October 8, 1962, the Supreme Court denied respondent's petition for a writ of certiorari. 371 U.S. 824, 83 S.Ct. 44, 9 L. Ed.2d 64 (1962). The FTC Order of April 13, 1964 became final on May 13, 1964, 15 U.S.C. § 45(i), and has been in effect at all times relevant to this action.

The FTC Order as modified provided:

"IT IS ORDERED that the respondents, The American News Company and the Union News Company, corporations, their officers, employees, agents or representatives, directly or through any corporate or other device, in or in connection with the purchase in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of products for resale on newsstands operated by respondents, do forthwith cease and desist from:

Receiving, or inducing and receiving, or contracting for the receipt of, anything of value from any of their suppliers as compensation or in consideration for display or promotional services or facilities furnished by or through respondents in connection with the processing, handling, sale, or offering for sale of products purchased from any of their suppliers, when respondents know or should know that such compensation or consideration is not affirmatively offered or otherwise made available by such suppliers on proportionally equal terms to all their other customers competing with respondents in the sale and distribution of such suppliers' products."

This action was instituted on December 31, 1970.[1] The complaint alleges that the defendant received "compensation" in varying amounts from three newspapers in New York City (The New York Times, The Daily News, and The Post) in connection with promoting and displaying these newspapers on its newsstands; that the defendant knew or should have known that such compensation was not offered or otherwise made available by the three newspapers on proportionally equal terms to all of their newsstand customers; and that by receiving such compensation, the defendant violated the FTC Order quoted above. The complaint comprises three counts: count 1 relates to The New York Times; count 2, to The Daily News; and count 3, to The Post.

The complaint alleges that these payments began at "some time prior to December 1965" and continued to shortly before the filing of the complaint. Payments allegedly received prior to December 31, 1965, however, are barred by the five-year statute of limitations which applies to civil penalty actions. 28 U.S.C. § 2462.

On the basis of the testimony of Mr. Ivan Veit, Executive Vice President, and Mr. Thomas McVeigh, Corporate Controller of the Times, and the exhibits received during the trial, the Court finds that each month from January, 1961 to July, 1969 the Union News Company billed the Times for "Rental of Space in Newsstands for New York Times Advertising Signs" and that the Times paid these bills. The payments from January, 1961 to August, 1963 were in the amount of $2,000 per month; they were increased in August, 1963 to $2,587.20 per month ($4.90 per stand for 528 stands).

On the basis of the testimony of Mr. William Carey, Circulation Manager, and Mr. Jack Underwood, Vice President and Director of Sales of The Daily News, and the exhibits received during the trial, the Court finds that each week from June 1, 1964 to March 3, 1969, except for periods—prior to 1966—when the Daily News was not published as a result of a strike, the Union News Company billed the Daily News for "Advertising Service" and that the Daily News paid these bills. The payments were in the amount of $500 per week.

On the basis of the testimony of Mr. Byron Greenberg, Circulation Director of the Post, and the exhibits received during the trial, the Court finds that from July, 1964 to June, 1969 the Union News Company billed the Post for "Advertising Service" and that the Post paid these bills. The payments were in the amount of $50 per month.

On the issue of the defendant's knowledge and intent, the Court received evidence as to payments made by other New York City newspapers to the Union News Company. On the basis of the deposition of Mr. Roy I. Newborn, who was Circulation Director of the now defunct New York Herald Tribune from 1961 to 1964, the Court finds that the Herald Tribune paid fees for advertising services on a monthly basis totalling $12,000 to $15,000 a year. That arrangement lasted until the Herald Tribune ceased publication on April 24, 1966. On the basis of the testimony of Mr. John Potulny, Manager of the field operations group of Dow Jones and Company (which publishes the Wall Street Journal), the Court finds that from the fall of 1965 to January, 1968, the Wall Street Journal made payments to Union News as a "promotional allowance" in the amount of $500 per month.

On the basis of the testimony of Mr. Nathan Goldstein, Mr. Jack Underwood, Mr. William Carey, and Mr. Byron Greenberg, the Court finds that Union News never inquired of the Times, the Daily News, or the Post whether payments were being offered to other news-

1. There is no dispute that before initiation of this suit the facts which gave rise to it were properly certified by the FTC to the Attorney General of the United States as required by section 16 of the Federal Trade Commission Act, 15 U.S.C. § 56.

stand operators in competition with Union News on a proportionally equal basis.[2] And the testimony at trial shows that the three newspapers did not in fact offer to make such payments to competitors.

Defendant contends on the basis of the testimony of Mr. William McCollough (President of Ancorp) that the payments received were not true advertising allowances, but rather price allowances, and that they were made as part of an effort to increase Ancorp's profits on the sale of newspapers. However, the invoices sent out to the three newspapers by Union News, which were received in evidence, themselves indicated that they were for advertising services. Moreover, Mr. McCollough acknowledged that the Union News Company received posters from the three newspapers to be displayed on its newsstands.[3]

The proof establishes and the Court finds that the following monthly payments were received by the Union News Company on or after January 1, 1966 in violation of the FTC Order:

| | |
|---|---|
| from the New York Times (from January 1, 1966 to July 1, 1969) | 42 |
| from the Daily News (from January 1, 1966 to March 3, 1969) [4] | 38 |
| from the Post (from January 1, 1966 to July 1, 1969) | 42 |
| Total number of violations of the Order | 122 [5] |

*Penalties*

The United States is seeking to recover the maximum penalty of $5,000 for each violation of the Order (15 U.S. C. § 45(l)).

■ In assessing the amount of penalties to be imposed for each violation, the relevant factors are: the wilfullness of the violations, the total amounts of the payments received by the defendant in violation of the FTC Order, the harm to the public from the violations, and the financial capacity of the defendant to pay whatever penalties are imposed. See United States v. J. B. Williams Co., 354 F.Supp. 521, 548 (S.D.N.Y.1973); United States v. Beatrice Foods Co., 351 F.Supp. 969 (D.Minn.1972); United States v. Vitasafe Corp., 234 F.Supp. 710 (S.D.N.Y.1964), aff'd, 352 F.2d 62 (2d Cir. 1965); United States v. American Greetings Corp., 168 F.Supp. 45 (N.D.Ohio 1958), aff'd 272 F.2d 935 (6th Cir. 1959).

The evidence at trial indicates that Mr. Henry Garfinkle, President of the Union News Company in 1963, sent a memorandum dated March 8, 1963 to the other officers and executives of Union News informing them of the FTC Order and instructing them to familiarize themselves with it and to report promptly any information that might indicate a potential violation. There was no evidence, however, of any other action taken by any officer of Union News to assure compliance with the FTC Order. The payments for advertising services, which the evidence indicates that Mr. Garfinkle helped to negotiate with the three newspapers, continued without

2. Defendant contends that since its stands were better lit, more fully stocked, open for longer hours, staffed by unionized sales employees, occupied more desirable locations, and were subject to more stringent regulations by its landlords (railroads, airports, and bus terminals), it had no competitors to whom proportionally equal terms could have been offered. The evidence, however, established that defendant's stands competed with other retail newspaper dealers in that they purchased the same products from the same suppliers and resold these products unaltered in the same market.

3. This issue was presented to the Court of Appeals, which said: "[E]ven if these payments were all no more than disguised price adjustments, as petitioners contend, they would nevertheless violate § 2(d) [of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(d), which] was aimed explicitly at promotional allowances which have the effect of price adjustments." 300 F.2d at 109.

4. The evidence indicates that payments were made on a weekly basis. The complaint's prayer for relief, however, speaks only in terms of monthly violations. For consistency, the Court adopts the monthly basis for calculating the number of violations.

5. The government's brief indicates that the total number of violations was 117. The Court's addition, however, is 122.

change from 1961 to 1969, when they were unilaterally cancelled by the newspapers. There was no evidence that Union News ever attempted to inform any of the newspapers from which it was receiving payments of the terms of the FTC Order or to inquire whether proportionally equal terms were offered by them to competitors of Union News. Rather, the evidence indicates that, with the exception of Mr. Garfinkle's memorandum, Union News ignored the FTC Order.[6]

With respect to the total payments received, the evidence shows that during the period from January 1, 1966 to the termination of the arrangements with the three newspapers in 1969, Union News received payments in violation of the FTC Order totalling $108,662.40 from the Times, $82,000.00 from the Daily News, and $2,100.00 from the Post; combined, these payments total $192,762.40.[7]

There is no evidence that the payments had any effect on the amount of Union newsstands' business nor on the price of newspapers sold to the public. The testimony indicates that Union newsstands sell newspapers within the City of New York at the cover price, as do their competitors. The competition that does exist among newsstands is primarily on the basis of their location and the number of items they carry. Since the evidence is speculative and inconclusive, the Court finds that harm to the public has not been demonstrated.

Ancorp is a conglomerate owning restaurants, snack bars, cafeterias, vending machines, catering facilities, drug stores, tobacco shops, and general merchandise marts as well as newsstands.

It also engages in the wholesaling of books, matches, tobacco products, candy, stationery, art supplies, office furniture and equipment, and background music systems. For 1968, its net income was $2,784,054; for 1969 $2,305,026; for 1970, $1,275,847; and for 1971, $83,506. The unaudited Consolidated Statement of Operations and Retained Earnings for the year ending December 29, 1972 shows an operating loss for the year in the amount of $13,672,953. The unaudited Consolidated Balance Sheet shows current liabilities of $51,943,210 against current assets of $27,682,578 and an earned deficit of −$4,576,648. On March 20, 1973, Chapter XI proceedings were instituted by Ancorp, seeking an arrangement with its creditors, which proceedings are presently pending in New York City.

■ On the basis of the factors discussed above, the Court imposes the following penalties on the defendant for the violations of the FTC Order found above:

| | |
|---|---:|
| on count 1: $2,500 for each of 42 violations | $105,000. |
| on count 2: $2,500 for each of 38 violations | 95,000. |
| on count 3: $100 for each of 42 violations | 4,200. |
| Total penalties | $204,200. |

■ The United States is entitled to a judgment against the defendant in the amount of $204,200, and costs. In addition, a permanent injunction will be issued enjoining defendant Ancorp from further violations of the FTC Order.

The foregoing constitutes the Court's findings of fact and conclusions of law. F.R.Civ.P. 52(a).

Settle judgment on notice.

6. While defendant contends that it mistakenly believed the Order to apply only to the sale of magazines and not newspapers, the Order's language is inclusive, referring to "products purchased from any of [its] suppliers."

7. The government contends that the total amount received by Union News from all its newspaper suppliers since January 1, 1966 was $237,094, though the complaint only alleged violations with respect to the Times, the Daily News, and the Post.