**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**ANCORP NATIONAL SERVICES,
INC., Defendant-Appellant.**

**No. 251, Docket 74–1214.**

United States Court of Appeals,
Second Circuit.

Submitted Dec. 19, 1974.

Decided March 21, 1975.

Roy M. Cohn, New York City (Saxe, Bacon, Bolan & Manley, New York City, on the brief), for defendant-appellant.

Gerald A. Rosenberg, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., and Naomi Reice Buchwald, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Before FRIENDLY, TIMBERS and GURFEIN, Circuit Judges.

TIMBERS, Circuit Judge:

Ancorp National Services, Inc. (Ancorp) appeals from a judgment entered December 18, 1973 after a bench trial in

the Southern District of New York, Dudley B. Bonsal, *District Judge,* 367 F.Supp. 1221, awarding the United States $204,200 in civil penalties, plus $1,430.66 costs, against Ancorp for violations of a Federal Trade Commission cease and desist order, and permanently enjoining Ancorp from further violations of the order.

Of the various claims of error raised on appeal, we find that the only ones that warrant discussion are whether the district court correctly concluded that the cease and desist order applies to newspapers and whether the district court exceeded its discretion in fixing the amount of the penalties. For the reasons below, we affirm.

## I.

On February 5, 1959, the FTC commenced an administrative proceeding under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1970). It charged Ancorp's predecessor, American News Company,[1] and the latter's wholly owned subsidiary, Union News Company,[2] with having received certain payments or disproportionate promotional allowances from their suppliers in violation of Section 2(d) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(d) (1970). The FTC issued a cease and desist order on January 10, 1961 after a hearing. On a petition to review, we modified the order and, as modified, affirmed and enforced it. American News Company v. FTC, 300 F.2d 104 (2 Cir.), cert. denied, 371 U.S. 824 (1962). The cease and desist order became final on May 13, 1964. It has remained in effect ever since.[3]

During the period 1964–1969, the Union News Division of Ancorp operated a large number of newsstands located primarily at railroad, airport, bus and subway terminals in New York City, as well as in other parts of New York State and in 21 other states and the District of Columbia. Most of these stands sold magazines, comic books, paperback books, candy, tobacco products and other items, in addition to newspapers.

The instant enforcement action was commenced December 31, 1970 by the United States at the direction of the Attorney General acting upon the FTC's certification of facts as to alleged violations by Ancorp of the cease and desist order.[4] The complaint alleged that Ancorp during the period 1965–1969[5] had

1. American News Company changed its name to Ancorp National Services, Inc., in 1969.

2. Union News Company, now an operating division of Ancorp, was a wholly owned subsidiary of American News Company in 1959.

3. The final cease and desist order provides:
   "IT IS ORDERED that the respondents, The American News Company and the Union News Company, corporations, their officers, employees, agents or representatives, directly or through any corporate or other device, in or in connection with the purchase in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of products for resale on newsstands operated by respondents, do forthwith cease and desist from:
   Receiving, or inducing and receiving, or contracting for the receipt of, anything of value from any of their suppliers as compensation or in consideration for display or promotional services or facilities furnished by or through respondents in connection with the processing, handling, sale, or offering for sale of products pur-

chased from any of their suppliers, when respondents know or should know that such compensation or consideration is not affirmatively offered or otherwise made available by such suppliers on proportionally equal terms to all their other customers competing with respondents in the sale and distribution of such suppliers' products."

4. Ancorp claims that the action was jurisdictionally defective because the government failed to comply with the certification procedure required by 15 U.S.C. § 56 (1970), citing United States v. St. Regis Paper Co., 355 F.2d 688, 699 (2 Cir. 1966). This claim is frivolous. Ancorp did not dispute an affidavit submitted by the government in the district court stating that it had complied with the certification procedure. 367 F.Supp. at 1223 n. 1. The government has included the certification in its appendix in this Court.

5. Recovery for violations based on payments allegedly received prior to December 31, 1965 is barred by the five year statute of limitations applicable to civil penalty actions. 28 U.S.C. § 2462 (1970).

received compensation from three New York City newspapers (The New York Times, The Daily News and The Post) in connection with promoting and displaying those newspapers on newsstands operated by it in New York and elsewhere; that Ancorp knew or should have known that such compensation was not made available by the newspapers on proportionally equal terms to all of their newsstand customers who were in competition with Ancorp; and that by receiving such compensation Ancorp had violated the cease and desist order. The government sought $585,000 in civil penalties pursuant to Section 5(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(1) (1970), and permanent injunctive relief.

After a four day bench trial, the district court found that during the period in question Union News had billed the Times for "Rental of Space in Newsstands for New York Times Advertising Signs" and the News and Post for "Advertising Service" in an aggregate amount of approximately $4600 per month and that the newspapers had paid these bills.[6] The court further found that Union News never inquired of the Times, the News or the Post whether payments were being offered on a proportionally equal basis to other newstand operators who were in competition with Union News. The evidence establishes that in fact the three newpapers did not offer such payments to competitors of Union news.

Based on its finding of 122 violations of the order by Ancorp during the period from January 1, 1966 to July 1, 1969, the court awarded the United States the civil penalties and injunctive relief stated above.

## II.

We turn directly to the issue of whether the cease and desist order applies to newspapers.

The language of the order itself surely is broad enough to encompass newspapers. It prohibits respondents from receiving anything of value "from any of their suppliers" in connection with "products for resale on newsstands operated by respondents" or "products purchased from any of their suppliers."

Ancorp contends that the order, although broad, does not apply to newspapers; or, in the alternative, that Ancorp reasonably misconstrued the scope of the order. It points out that the original FTC complaint in 1959 referred only to promotional allowances on magazines, pocket books, comic books and cigars. It argues that, since the practice of granting such allowances on newspapers was in existence prior to 1959, the FTC must have known of and ignored such allowances when it filed its original complaint. We disagree.

While it is true that the original proceeding was "primarily concerned with practices in connection with sales of certain publications, including magazines, comic books and pocket books", American News Co. v. FTC, *supra,* 300 F.2d at 107,[7] it is well settled that the FTC could have included newspapers in its order so as to prevent Ancorp's continuation of its practices by merely substituting newspapers for magazines. FTC v. Broch & Co., 368 U.S. 360, 364 (1962); FTC v. Mandel Brothers, 359 U.S. 385, 391–93 (1959); Vanity Fair Paper Mills, Inc. v. FTC, 311 F.2d 480, 487 (2 Cir. 1962); Swanee Paper Co. v. FTC, 291 F.2d 833, 837–38 (2 Cir. 1961), cert. denied, 368 U.S. 987 (1962).

We hold that the district court here was amply justified in construing the order to encompass newspapers. As we pointed out in United States v. J. B. Williams Co., 498 F.2d 414, 431 (2 Cir. 1974), "[A cease and desist] order must be interpreted in light of its principal purpose. . . ." The purpose here

---

**6.** The court also found that the former New York Herald Tribune and The Wall Street Journal had made substantial payments to Union News during portions of this period.

**7.** We also noted that Union News stands sold "candy, cigars, cigarettes, and other items *in addition to newspapers and magazines.*" 300 F.2d at 107 (emphasis added).

was to prohibit Ancorp in the exercise of its market dominance from demanding and receiving from its suppliers rebates not offered to competitors. The order applies to all suppliers of Ancorp's products. Magazines and books are not different enough from newspapers to make it unfair to construe the order as applicable to newspapers. Ancorp is engaged in a similar function with respect to magazines, books and newspapers: it merely displays them at its newsstands for resale to the public. It would make no sense to interpret the order so as to limit its scope to those products specified in the original complaint and to exclude newspapers from its coverage.

There are other indications that the FTC intended to frame a broad order rather than a narrow one. The hearing examiner's proposed order had enumerated "magazines, pocket books, paperback and comic books, newspapers, cigars, candy, toys and sundry items." The Commission's replacement of this list of products with the phrase "products for resale on newsstands" strongly suggests an intent to generalize, rather than to constrict, the scope of the order.

Moreover, the original complaint had charged unsuccessful inducement of discriminatory payments from cigar manufacturers in violation of Section 2(d) of the Clayton Act, 15 U.S.C. § 13(d) (1970). While the FTC found this charge to be unsupported by the evidence and therefore did not reach the issue whether such an attempt to induce a violation of Section 2(d) would constitute a violation of Section 5, it stated in its opinion that:

> "We feel that the public interest will be adequately served by an order prohibiting respondents from actually receiving discriminatory allowances from their suppliers, including cigar manufacturers."

Similarly, no evidence was adduced with respect to newspapers, but it also was in the public interest to prohibit discriminatory allowances with respect to them.

If Ancorp had objections to the generalization aspect of the order or was unsure of its meaning, its remedy was to raise the point in its petition to review in this Court or to inquire of the FTC as to the scope of the order before embarking on the course of conduct which resulted in the offenses charged here. See United States v. Beatrice Foods Co., 493 F.2d 1259, 1264, 1269 (8 Cir. 1974), cert. denied, 420 U.S. 961 (1975); Rettinger v. FTC, 392 F.2d 454, 456–57 (2 Cir. 1968).

We find no merit in Ancorp's contention that it reasonably misconstrued the scope of the order. A defendant's good faith but erroneous interpretation of the obligations of a cease and desist order, which is sufficiently clear to place it on notice of the prohibited conduct, is no defense in a civil enforcement proceeding. A claim of good faith would be relevant only as a factor to be considered by the district court in assessing the penalty to be imposed. United States v. Beatrice Foods Co., *supra,* 493 F.2d at 1269; United States v. Swingline, Inc., 371 F.Supp. 37, 45 (E.D.N.Y. 1974); United States v. H. M. Prince Textiles, Inc., 262 F.Supp. 383, 389 (S.D.N.Y.1966); United States v. Vitasafe Corp., 212 F.Supp. 397, 398 (S.D.N.Y. 1962); cf. United States v. St. Regis Paper Co., 285 F.2d 607, 614 (2 Cir. 1960), aff'd, 368 U.S. 208 (1961).

Ancorp claims that the amount of the penalties assessed was excessive. The total penalties imposed ($204,200), while somewhat more than the total money received by Ancorp from the Times, the Post and the News from 1966 to 1969, is less than half the amount demanded by the government ($585,000).[8] Determination of the amount of penalties is committed to the informed discretion of the district judge. United States v. J. B. Williams Co., *supra,* 498 F.2d at 438. Here the judge, in determining the amount of the penalties, 367 F.Supp. 1224–25, explicitly con-

---

8. The government in its complaint sought the then maximum penalty per violation ($5,000). 15 U.S.C. § 45(*l*) (1970). The maximum has since been raised to $10,000 per violation. 15 U.S.C. § 45(*l*) (Supp. III 1973).

sidered each of the factors delineated in *Williams.* We find no abuse of discretion.

■ The issuance of a permanent injunction by the district court was justified as a prophylactic measure in view of the near-identity between the instant scheme involving newspapers and that involving magazines and books charged in the original complaint. 15 U.S.C. § 45(*l*) (Supp. III 1973). See SEC v. Koenig, 469 F.2d 198, 202 (2 Cir. 1972); SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1100–01 (2 Cir. 1972); United States v. Diapulse Corp. of America, 457 F.2d 25, 27–28 (2 Cir. 1972).

Affirmed.