**UNITED STATES of America, Plaintiff,**

**v.**

**Alec BARBACOFF t/a New Beacon Pharmacy, Defendant.**

**Civ. A. No. 75–1069.**

United States District Court,
District of Columbia,
Civil Division.

July 9, 1976.

Thomas G. Corcoran, Jr., Asst. U. S. Atty., U. S. District Court, Washington, D. C., for plaintiffs.

Paul F. Interdonato, Washington, D. C., for defendant.

JOHN H. PRATT, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

By order dated March 10, 1976, the Court granted the plaintiff's second motion for partial summary judgment herein. Thereafter, on June 3, 1976, the Court held a hearing at which plaintiff and defendant had an opportunity to present witnesses and cross-examine. Based on that hearing and the entire record herein, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Defendant failed to maintain complete and accurate records with respect to the receipt and distribution of Preludin 75 mg. Endurets during the period extending from the opening of business on June 5, 1973 through the close of business on September 10, 1975. Defendant was unable to account for an overage of 1,962 Preludin 75 mg. Endurets. [Affidavit of Zenon Grundkowski, dated December 29, 1975, ¶¶ 4–5, Exhibit A to plaintiff's second motion for partial summary judgment; Affidavit of Robert C. Williamson, dated December 24, 1975, ¶ 3, Exhibit B to plaintiff's second motion for partial summary judgment].

2. Defendant failed to maintain complete and accurate records with respect to the receipt and distribution of Ritalin 20 mg. Tablets during the period extending from the opening of business on June 5, 1973 through the close of business on September 10, 1975. Defendant was unable to account for an overage of 3,072 Ritalin 20 mg. Tablets. [Affidavit of Zenon Grundkowski, dated December 29, 1975, ¶ 4, *supra*; Affidavit of Robert C. Williamson, dated December 24, 1975, ¶ 3, *supra*].

3. Defendant failed to complete 43 Official Order Forms (DEA–2220) showing receipts of Controlled Substances during the

period June 5, 1973 to September 10, 1975. [Affidavit of Zenon Grundkowski, dated December 29, 1975, ¶ 5, *supra* ; Affidavit of Robert C. Williamson, dated December 24, 1975, ¶ 3, *supra* ].

4. Defendant failed to inventory preparations containing methaqualone on November 5, 1973. [Affidavit of Zenon Grundkowski, dated December 29, 1975, ¶ 6, *supra* ; Affidavit of Robert C. Williamson, dated December 24, 1975, ¶ 3, *supra* ].

5. Defendant failed to inventory preparations containing pentobarbital, secobarbital, and amobarbital on January 1, 1974. [Affidavit of Zenon Grundkowski, dated December 29, 1975, ¶ 6, *supra* ; Affidavit of Robert C. Williamson, dated December 24, 1975, ¶ 3, *supra* ].

6. Defendant filled 527 forged prescriptions for Preludin and Ritalin. [Affidavit of Zenon Grundkowski, dated December 29, 1975, ¶ 7, *supra* ;. Affidavit of Robert C. Williamson, dated December 24, 1975, ¶¶ 4–5, *supra* ; Affidavit of Thomas M. Dent, III, M.D., dated December 23, 1975, ¶¶ 1–2, Exhibit C to plaintiff's second motion for partial summary judgment; Report of Barry M. Spittle, Exhibit A to plaintiff's memorandum on civil penalty to be assessed].

7. Defendant filled 300 prescriptions for Preludin Tablets bearing the xeroxed signature of Frederick J. Washington, M.D. [Affidavit of Zenon Grundkowski, dated December 29, 1975, ¶ 1, *supra* ; Affidavit of Robert C. Williamson, dated December 24, 1975, ¶ 1, *supra* ; Report of Investigation, Exhibit A to Amended Complaint, pp. 9–11].

8. Between the beginning of 1972 and the end of 1975, defendant dispensed nearly 500,000 Preludin 75 mg. Endurets and approximately 400,000 Ritalin 20 mg. Tablets. [Defendant's Answer to Interrogatories; Deposition of Alec Barbacoff].

9. Defendant grossed approximately $76,648 from the sale of Preludin in this period and $51,981 from the sale of Ritalin. [Defendant's Answer to Interrogatories; Deposition of Alec Barbacoff].

10. The profit made on the sale of Preludin and Ritalin between 1972 and 1975 was essential to the solvency of his business. [Plaintiff's memorandum on civil penalty to be assessed, p. 3; Deposition of Alec Barbacoff, Exhibit B to plaintiff's memorandum on civil penalty to be assessed, pp. 59–61; Testimony of Alec. Barbacoff, June 3, 1976].

11. Between 1972 and 1975, phenmetrazine was one of the most commonly used drugs, if not the most commonly abused drug, in the District of Columbia. [Exhibits G, H, and I in support of plaintiff's memorandum on civil penalty to be assessed].

12. From May 10, 1973 to August 10, 1973, Boehringer-Ingelheim, the manufacturer of Preludin, imposed a moratorium on its distribution in the Washington area.

13. During the week of June 17, 1974, Mr. Barbacoff had a conference with Assistant United States Attorney Jason D. Kogan.. Mr. Kogan informed Mr. Barbacoff that Dr. Burton had been selling prescriptions for Preludin and Ritalin to persons with no medical need for them, that Mr. Barbacoff had been filling those prescriptions, and that the persons to whom the prescriptions were issued were using these drugs to satisfy their own addictions or to sell the drugs to addicts. [Affidavit of Jason D. Kogan, Exhibit C to plaintiff's memorandum on civil penalty to be assessed; Testimony of Jason D. Kogan, June 3, 1976].

14. On June 26, 1974, the District of Columbia Pharmaceutical Association sent to each of its members a Report of the Resolution Committee, including the following:

Resolution # 3: Whereas, the D.C. Pharmaceutical Association, recognizing the problems associated with the illegal diversion and usage of D.E.A. Schedule II Drugs in the Washington area includes the District of Columbia as well as nearby and adjacent Virginia and Maryland, and, Whereas, much of the diversion has occurred through LEGITIMATE Rx dispensing, Therefore, Be it resolved that

the D.C. Pharmaceutical Association recommend to the D.C. Government that they undertake an investigation into the possibility of establishing in conjunction and cooperation with these neighboring states a monitoring system of D.E.A. Schedule II Drug prescriptions. (Exhibit D).

The records of the District of Columbia Pharmaceutical Association indicate Mr. Barbacoff was a member at that time. [Exhibits D and E in support of memorandum on civil penalty to be assessed].

15. On June 28, 1974 Mr. Barbacoff's pharmacy was inspected by Detective DiDomenico of the Metropolitan Police Department. Detective DiDomenico noticed approximately 40 vials of Preludin stacked on Mr. Barbacoff's prescription counter. The detective asked Mr. Barbacoff why he had all these vials. Mr. Barbacoff answered with words to the effect that he was the only pharmacist around who was willing to fill these prescriptions and if it was a legitimate prescription he would fill it. [Testimony of Charles F. DiDomenico, June 3, 1976; Affidavit of Charles F. DiDomenico, dated May 25, 1976, Exhibit F in support of memorandum on civil penalty to be assessed].

16. On August 8 and 9, 1974, New Beacon was again inspected by Detective DiDomenico. The detective told Mr. Barbacoff he was filling an enormous volume of prescriptions for Preludin and Ritalin and that he had filled a number of obviously forged prescriptions. Mr. Barbacoff responded that he did not have time to check things like that and that he would fill any prescriptions that came in. [Id.]

17. On February 20, 1975 the New Beacon Pharmacy was inspected by Compliance Investigators Williamson and Grundkowski of the Drug Enforcement Administration. When shown two sets of prescriptions imprinted with Dr. Dent's name but in two different handwritings, Mr. Barbacoff admitted to the investigators that he had filled both sets of prescriptions with the full knowledge that one set was false. When asked why so many customers were flocking to his pharmacy, not only from the District of Columbia but from Virginia and Maryland as well, to have their prescriptions filled for Preludin and Ritalin, Mr. Barbacoff replied that certain pharmacies were reluctant to fill prescriptions for these drugs, but he was not. [Testimony of Zenon Grundkowski, June 3, 1976; Exhibit A to the Complaint, pp. 8–9].

18. New Beacon Pharmacy was the most important source of Preludin in the Washington area during the period from 1972 to 1975. [Testimony of Zenon Grundkowski, June 3, 1976; Status Report of Zenon Grundkowski, dated March 29, 1976, Exhibit J in support of memorandum on civil penalty to be assessed].

19. Based on an examination of prescriptions filled by Mr. Barbacoff and knowledge of the price he charged, two reputable pharmacists in the District of Columbia, Mr. Aaron Rosenstadt, President of the District of Columbia Board of Pharmacy, and Mr. Everett A. Gill, President-Elect of the Washington, D.C., Pharmaceutical Association, concluded that a pharmacist who filled these purported prescriptions must have known that some of the prescriptions had been forged (Exhibit B in support of motion for summary judgment), some had been mechanically reproduced (Exhibit G in support of motion for summary judgment), and that the bulk of them had not been issued in the course of legitimate medical practice. [Testimony of Aaron Rosenstadt and Everett A. Gill, June 3, 1976; Exhibits K and L in support of memorandum on civil penalty to be assessed].

20. The Court finds that the defendant, Alec Barbacoff, filled all or most of the prescriptions filed herein as Exhibit E in support of the plaintiff's second motion for partial summary judgment, knowing that the signatures thereon were forged.

21. The Court finds that the defendant, Alec Barbacoff, filled all or most of the prescriptions filed herein as Exhibit G in support of the plaintiff's second motion for partial summary judgment, knowing that the signatures thereon were mechanically reproduced.

22. The Court finds that the defendant, Alec Barbacoff, failed to maintain complete and accurate records with respect to the receipt and distribution of Preludin and Ritalin in the course of a reckless pursuit of profit that amounted to willfulness. [Exhibits A and B in support of plaintiff's second motion for partial summary judgment; Answer to Interrogatories; Testimony of Alec Barbacoff, June 3, 1976; Deposition of Alec Barbacoff].

23. The Court finds that the defendant, Alec Barbacoff, failed to complete 43 Official Order Forms showing receipts of controlled substances during the period June 5, 1973 to September 10, 1975, in the course of a reckless pursuit of profit that amounted to willfulness. [Exhibits A and B in support of plaintiff's second motion for partial summary judgment; Testimony of Alec Barbacoff, June 3, 1976; Deposition of Alec Barbacoff].

24. The Court finds that the defendant, Alec Barbacoff, failed to inventory preparations containing methaqualone, pentobarbital, secobarbital, and amobarbital as required, in the course of a reckless pursuit of profit that amounted to willfulness. [Exhibits A and B in support of plaintiff's second motion for partial summary judgment; Testimony of Alec Barbacoff, June 3, 1976; Deposition of Alec Barbacoff].

25. The Court finds that the defendant, Alec Barbacoff, filled prescriptions for Preludin and Ritalin between 1972 and 1975 knowing that many of them had not been issued in the course of legitimate medical practice. [Testimony of Aaron Rosenstadt and Everett A. Gill, June 3, 1976; Exhibits K and L in support of memorandum on civil penalty to be assessed].

### Conclusions of Law

1. This Court has jurisdiction to order injunctive relief and to assess penalties for the violation of the Controlled Substances Act in the District of Columbia. 21 U.S.C. §§ 842(c)(1) and 882(a), and 28 U.S.C. § 1355.

2. For purposes of determining whether defendant had violated the Controlled Substances Act, it is immaterial that defendant observed reasonable commercial standards. Rather, such a showing, if relevant, would only be in mitigation of the penalty to be assessed.

3. In considering the amount of penalty to be assessed, the Court should consider (1) the willfulness of the violations, (2) how much the defendant earned as the result of his unlawful activities, (3) the harm to the public, and (4) the financial capacity of the defendant to pay. *United States v. J. B. Williams*, 498 F.2d 414, 436 (2nd Cir. 1974); *United States v. Ancorp*, 367 F.Supp. 1221 (S.D.N.Y.1973).

4. Defendant has violated 21 U.S.C. § 827(a)(3), 21 U.S.C. § 842(a)(5), 21 U.S.C. § 828(c)(2), 21 U.S.C. § 842(a)(1), 21 C.F.R. § 1304.24 (1975), 21 C.F.R. § 1305.09(e) (1975), 21 C.F.R. § 1304.14 (1975), 21 C.F.R. § 1306.05(a) (1975), and 21 C.F.R. § 1306.06 (1975), as set out in Counts I through V of the Amended Complaint.

5. Defendant has also violated 21 C.F.R. § 1306.04 (1975).

6. Defendant has engaged in a course of business conduct in willful and callous disregard of the law and regulations regarding controlled substances when he knew, or should have known, that he was in violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*

An Order consistent with the foregoing Findings of Fact and Conclusions of Law has been entered this date.

### ORDER

It is therefore, this 9th day of July, 1976,

ORDERED, that defendant (1) prepare and maintain complete and accurate records of controlled substances in accordance with 21 U.S.C. § 827(a)(3) and the regulations of the Drug Enforcement Administration, (2) that defendant inventory drugs containing controlled substances in accordance with 21 U.S.C. § 827(a)(3) and the regulations of the Drug Enforcement Administration, and (3) that defendant cease and desist from filling

prescriptions in violation of 21 U.S.C. § 842(a)(1) and the regulations of the Drug Enforcement Administration; and it is

FURTHER ORDERED, judgment be and it hereby is entered in favor of plaintiff and against defendant for $2,000 for the violations set out in Count I of the Amended Complaint, for $1,000 for the violations set out in Count II of the Amended Complaint, for $2,000 for the violations set out in Count III of the Amended Complaint, for $30,000 for the violations set out in Count IV of the Amended Complaint, and for $30,000 for the violations set out in Count V of the Amended Complaint, the total amount of this judgment being $65,000.00.